# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VI KIET DIEP,<br><br>        Petitioner,<br><br>    v.<br><br>MINGA WOFFORD[1], Facility Administrator,<br><br>        Respondents. | Case No.: 1:24-cv-01238-SKO (HC)<br><br>ORDER DENYING RESPONDENT'S MOTION TO DISMISS (Doc. 12), GRANTING PETITION FOR WRIT OF HABEAS CORPUS, AND DIRECTING RESPONDENT TO PROVIDE BOND HEARING BEFORE AN IMMIGRATION JUDGE WITHIN THIRTY (30) DAYS |

Petitioner is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He is represented in this action by the San Francisco Public Defender's Office. The parties having consented to the jurisdiction of the magistrate judge, on October 28, 2024,

---

[1] Respondent moves to dismiss all unlawfully named officials. As explained by the Supreme Court in Rumsfeld v. Padilla, 542 U.S. 426, 430 (2004), the proper respondent in habeas cases is the "warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." In § 2241 cases involving non-citizen aliens detained at a private detention facility, the proper respondent is the warden of the private detention facility. Doe v. Garland, 109 F.4th 1188 (9th Cir. 2024). Accordingly, the Court hereby grants Respondent's motion and dismisses all unlawfully named officials. The proper respondent is Minga Wofford, the Facility Administrator at Petitioner's detention facility.

1

the case was reassigned to the undersigned for all purposes including trial and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

Petitioner filed the instant petition on October 11, 2024. (Doc. 1.[2]) On December 5, 2024, Respondent filed a motion to dismiss the petition. (Doc. 12.) On December 16, 2024, Petitioner filed an opposition. (Doc. 13.) Respondent did not file a reply.

Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth Amendment. He claims he should be provided a bond hearing before an immigration judge ("IJ") at which the Government must justify his continued detention by clear and convincing evidence.

For the reasons discussed below, the Court will DENY Respondent's motion to dismiss, GRANT the petition, and DIRECT Respondent to provide a bond hearing before an immigration judge or release Petitioner from detention.

## I.     BACKGROUND

Petitioner was born in Vietnam in 1971. (Docs. 1 at 6; 12-1 at 2.) He was admitted to the United States as a Lawful Permanent Resident in 1980, retroactive to April 13, 1978, and has lived in the United States for the past 44 years. (Docs. 1 at 7; 12-1 at 2.)

On June 18, 1996, Petitioner was convicted of the murder of a nine-year old boy, second degree robbery, and conspiracy to commit kidnapping. (Docs. 1 at 9-10; 12-1 at 2-3.) He was initially sentenced to a term of life without possibility of parole plus six years. (Docs. 1 at 8-9; 12-1 at 3.) He was later resentenced to a term of 31 years to life. (Doc. 1 at 10.) In August of 2023, the California Board of Parole Hearings granted Petitioner release on parole. (Doc. 1 at 10.)

On January 24, 2024, ICE arrested Petitioner upon his release from state custody at the conclusion of his term of incarceration. (Doc. 12-1 at 3.) Based on his criminal history, ICE charged him with removability under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act

---

[2] Citations are to ECF docket pagination.

2

("INA"). (Doc. 1 at 10.) Petitioner was taken into ICE custody under the mandatory detention provisions in § 236(c) of the INA. (Doc. 12-1 at 3.) He has been in continuous custody since that time.

On February 9, 2024, Petitioner appeared in removal proceedings and requested a continuance for attorney preparation. (Doc. 12-1 at 4.) On March 18, 2024, he filed a motion to terminate which the IJ denied without prejudice on March 26, 2024. (Doc. 12-1 at 4.)  On March 26, 2024, Petitioner appeared in removal proceedings and requested a contested removability hearing. (Doc. 12-1 at 4.) The matter was calendared for May 1, 2024. (Doc. 12-1 at 4.) On May 1, 2024, Petitioner appeared in removal proceedings and requested a continuance to seek collateral relief concerning his conviction. (Doc. 12-1 at 4.) The IJ continued the matter to May 30, 2024. (Doc. 12-1 at 4.)

On May 28, 2024, Petitioner requested an extension of time due to scheduling of his post-conviction relief hearing. (Doc. 12-1 at 4.) The IJ granted the extension. (Doc. 12-1 at 4.) Thereafter, Petitioner sought and was granted three extensions of time due to scheduling of his post-conviction relief proceedings which resulted in another four-month delay. (Doc. 12-1 at 4.) On September 16, 2024, Petitioner's hearing on his application for relief from removal commenced. (Doc. 12-1 at 4.)  On February 5, 2025, the IJ ordered Petitioner removed from the United States. See https://acis.eoir.justice.gov/en/caseInformation (case status determined utilizing Petitioner's File Number) (last visited February 24, 2025).[3]

## II.    DISCUSSION

### A.   Due Process in Prolonged Immigration Detention

The parties acknowledge that Petitioner has been detained for approximately 13 months pursuant to 8 U.S.C. § 1226(c) due to Petitioner's prior conviction of aggravated felonies, *to wit*, the murder of a nine-year old boy and robbery.  Section 1226(a) permits the Attorney General to release aliens on bond, "[e]xcept as provided in subsection (c)."  Section 1226(c) in turn states that the Attorney General "shall take into custody any alien who" falls into one of the enumerated categories

---

[3] The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). Accordingly, the Court takes judicial notice of Petitioner's case information maintained by the Department of Justice's Executive Office for Immigration Review.

involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c)(2) then states that the Attorney General may release an alien described in § 1226(c)(1) "'*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original). In Jennings, the Supreme Court held that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" Id. (citing 8 U.S.C. § 1226(a)). Further, the Supreme Court noted that "[b]y expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions." Id. at 304 (emphasis in original). Thus, the Supreme Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." Id. Here, Petitioner does not meet the conditions for release. Therefore, statutorily, § 1226 mandates detention. Petitioner contends that, although the statute mandates detention, his detention without a bail review hearing has become so unreasonably prolonged as to violate his Fifth Amendment procedural due process rights.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

Although Petitioner does not facially challenge the statute, and the Supreme Court has not directly addressed the constitutionality of prolonged detention in the context of an as applied challenge to 8 U.S.C. § 1226(c), the Supreme Court's statutory decisions regarding mandatory detention provide guidance regarding prolonged detention in an as applied challenge under the Due Process Clause.

4

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Court considered a due process challenge to detention of aliens under 8 U.S.C. § 1231, which governs detention following a final order of removal. The Court in Zadvydas read § 1231 to authorize continued detention of an alien following the 90-day removal period for only such time as is reasonably necessary to secure the alien's removal. Id. at 699. Zadvydas is materially different from the present case. In Zadvydas, the aliens challenging their detention following final orders of deportation were ones for whom removal was "no longer practically attainable." Id. at 690. The Court observed that where, as there, "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." Id. (internal quotation marks and citation omitted). Zadvydas distinguished § 1231 from § 1226 on these very grounds, noting that "post-removal-period detention, unlike detention pending a determination of removability, has no obvious termination point." Id. at 697. Here, however, removal is practically attainable. As the Supreme Court noted in Jennings, "detention under § 1226(c) has a definite termination point: the conclusion of removal proceedings." Jennings, 583 U.S. at 304.

In Demore v. Kim, a lawful permanent resident alien challenged the no-bail provision of the Immigration and Nationality Act ("INA"), contending that his six-month detention violated due process because he had not been provided an individualized bond hearing. 538 U.S. 510. The Supreme Court rejected this claim, observing first that Congress, in its "broad power over naturalization and immigration proceedings," "regularly makes rules that would be unacceptable if applied to United States citizens." Id. at 521 (quoting Mathews v. Diaz, 426 U.S. 67, 79-80 (1976)). Additionally, detention pending removal necessarily serves the purpose of preventing aliens from fleeing prior to or during removal proceedings. Id. at 527-28. The Court noted that detention under § 1226(c) has a definite termination point. Id. at 529. Although the Supreme Court did not specify an outer limit as to what constitutes a permissible detention period, it acknowledged that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases ... and about five months in the minority of cases in which the alien chooses to appeal." Id. at 530. The majority held that six months did not run afoul of the due process clause in part because the delayed proceedings were the result of the alien's own requests. Id. at 530–31.

In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in Demore, which clarified that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring). Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause. See, e.g., Rodriguez v. Marin ("Rodriguez IV"), 909 F.3d 252, 256 (9th Cir. 2018) (the Ninth Circuit asserted "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional...."); Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011) (detention of an alien for a period of nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause"); Jensen v. Garland, 2023 WL 3246522 (C.D.Cal. 2023); M.T.B. v. Byers, 2024 WL 3881843 (E.D. Ky. 2024); Sanchez-Rivera v. Matuszewski, 2023 WL 139801 (S.D. Cal. 2023); Banda v. McAleenan, 385 F.Supp.3d 1099 (W.D. Wash. 2019).

B. The Mathews Test

In analyzing whether a due process violation has occurred in this case, Petitioner urges the Court to employ the Mathews[4] test. Respondent contends the multi-factor balancing under Mathews is unsupported by Supreme Court authority and inappropriate in this context.

The Ninth Circuit has noted that many courts have applied the Mathews test in considering due process challenges in the immigration context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). The Ninth Circuit stated that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Id. at 1206-07. Yet, the Court notes that the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of Mathews. See, e.g.,

---

[4] Mathews v. Eldridge, 424 U.S. 319 (1976).

6

1  Demore, 538 U.S. at 523, 526–29; see also Dusenbery v. United States, 534 U.S. 161, 168, 122 S.Ct.
2  694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed Mathews as announcing an all-embracing test
3  for deciding due process claims.").

4  Most district courts in the Ninth Circuit have employed the Mathews test in the context of
5  evaluating whether due process entitles a petitioner to a bond hearing. See, e.g., Jensen v. Garland,
6  2023 WL 3246522, at *4 (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL
7  4839502, at *3 (C.D. Cal. 2021); Jimenez v. Wolf, 2020 WL 510347, at *3 (N.D. Cal. 2020). Also, the
8  Ninth Circuit has noted the common use of the Mathews test and assumed (without deciding) that it
9  applies to due process claims in the immigration detention context. Rodriguez Diaz v. Garland, 53
10 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application of the Mathews test in this case
11 appropriate.

12 Under the Mathews test, the "identification of the specific dictates of due process generally
13 requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35.  "First, the private
14 interest that will be affected by the official action; second, the risk of an erroneous deprivation of such
15 interest through the procedures used, and the probable value, if any, of additional or substitute
16 procedural safeguards; and finally, the Government's interest, including the function involved and the
17 fiscal and administrative burdens that the additional or substitute procedural requirement would
18 entail." Id. at 335.

19 In the first factor, the Court must evaluate Petitioner's private interest. Petitioner has now been
20 detained approximately 13 months. Compared to the six-month presumptive period set forth in
21 Zadvydas beyond which continued detention becomes prolonged, Petitioner's 13-month detention
22 qualifies as prolonged. Zadvydas, 533 U.S. at 701. The Ninth Circuit has also held that an individual's
23 private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v.
24 Holder, 638 F.3d 1196, 1208 (9th Cir. 2011).

25 In Rodriguez Diaz v. Garland, the Ninth Circuit stated that "in evaluating the first prong of the
26 Mathews analysis, we cannot simply count his months of detention and leave it at that. We must also
27 consider the process he received during this time, the further process that was available to him, and the
28 fact that his detention was prolonged due to his decision to challenge his removal order." 53 F.4th at

1208. Here, unlike the petitioner in Rodriguez Diaz, Petitioner has not received the benefit of a bond hearing. The Ninth Circuit noted that detentions longer than six months were considered "prolonged" in cases such as this where "no individualized bond hearings had taken place at all." Id. at 1207. The appellate court found this distinction significant. Id. Thus, Petitioner's private interest in being free from prolonged detention of approximately 13 months weighs in his favor.

As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," Mathews, 424 U.S. at 335, the Court finds this factor also weighs in favor of Petitioner. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" Jimenez, 2020 WL 510347, at *3. Thus, the probable value of additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided virtually no procedural safeguards. Given that Petitioner has been held without a bond hearing for over a year and it is not clear when detention will end, the risk of erroneous deprivation weighs in favor of granting a bond hearing.

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. As previously discussed, the government has a strong interest in effecting removal. Demore, 538 U.S. at 531. As other courts have recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Zagal-Alcaraz v. ICE Field Office Director, 2020 WL 1862254, at *7 (D. Or. 2020) (collecting cases). Here, the government's asserted interest is based on mere speculation about Petitioner's risk of flight or dangerousness. Petitioner seeks a bond hearing, not an unqualified release. Providing a bond hearing would not undercut the government's asserted interest in effecting removal. Indeed, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community. See In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006). Given "the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as Petitioner's." Zagal-Alcaraz, 2020 WL 1862254,

8

*7 (quoting Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). The Court agrees with this analysis. Although the Government has a strong interest, it is outweighed by Petitioner's.

In sum, the three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in further detention without inquiry into whether he represents a flight risk or danger to the community.  The Court thus finds that Petitioner's prolonged detention without a bond hearing before an IJ violates his Fifth Amendment due process rights.

## III.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED:

1) Respondent's motion to dismiss (Doc. 12) is DENIED;
2) The petition for writ of habeas corpus is GRANTED; and
3) Respondent is ORDERED to provide Petitioner with a bond hearing before an immigration judge at which Respondent must justify Petitioner's continued detention by clear and convincing evidence, and said hearing is to be provided within thirty (30) days of this Order. In the event Respondent fails to hold said bond hearing, Petitioner must be released from detention under appropriate supervision.

IT IS SO ORDERED.

Dated:   **February 24, 2025**           /s/ *Sheila K. Oberto*
                                                                       UNITED STATES MAGISTRATE JUDGE